# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KM-00795-COA

**JOE CLYDE TUBWELL A/K/A JOE C. TUBWELL A/K/A JOE TUBWELL**                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                                                          APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 06/02/2017 |
| TRIAL JUDGE: | HON. GERALD W. CHATHAM SR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOE CLYDE TUBWELL (PRO SE) |
| ATTORNEY FOR APPELLEE: | ROBERT E. HAYES JR. |
| COUNTY ATTORNEY: | ROBERT E. HAYES JR. |
| NATURE OF THE CASE: | CRIMINAL - MISDEMEANOR |
| DISPOSITION: | AFFIRMED: 01/08/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, C.J., BARNES AND CARLTON, P.JJ.**

**GRIFFIS, C.J., FOR THE COURT:**

¶1.    Joe Clyde Tubwell appeals his misdemeanor convictions of the unsafe operation of a motor vehicle and failure to dim high beams, as well as the imposition of fines and court costs.  We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.    On the evening of November 7, 2014, Matt Defore, a patrol officer with the Southaven Police Department, observed a truck, driven by Tubwell, traveling westbound on Rasco Road with its high beams in use.  Officer Defore performed a u-turn and was ultimately able to get behind the vehicle.  As Officer Defore approached, the vehicle turned

onto Ashbrook Road. According to Officer Defore, the vehicle was traveling approximately forty miles-per-hour in a twenty-five miles-per-hour zone. As a result, Officer Defore "turned on [his] blue lights to make a traffic stop." Tubwell was cited for the unsafe operation of a motor vehicle in violation of City Code #9-332 and the failure to dim high beams in violation of Mississippi Code Annotated section 63-7-33 (Rev. 2012). Tubwell was advised of his municipal court date.

¶3.     On March 18, 2015, Tubwell was convicted in the Municipal Court of the City of Southaven of the unsafe operation of a motor vehicle and the failure to dim high beams. Tubwell appealed his convictions to the DeSoto County County Court. Tubwell was allowed to proceed in the county court in forma pauperis.

¶4.     A bench trial was held on December 1, 2015. Tubwell, who represented himself, testified at trial and presented witnesses on his behalf. The county court found Tubwell guilty of both charges. Tubwell was not sentenced to jail, but he was ordered to pay $150 in fines, $316 in lower court costs,[1] and $110 in county court costs. Tubwell filed a motion for a judgment notwithstanding the verdict (JNOV) or, alternatively, a new trial, which the county court denied. Tubwell subsequently appealed to the DeSoto County Circuit Court. Tubwell was allowed to proceed in the circuit court in forma pauperis.

¶5.     On May 31, 2017, the circuit court, sitting as an appellate court, reviewed the record, as well as the briefs submitted by the parties, and affirmed the county court's judgment.

---

[1] Specifically, Tubwell was ordered to pay a $50 fine and $163 in lower court costs for the unsafe operation of a motor vehicle and a $100 fine and $153 in lower court costs for the failure to dim high beams, for a total fine of $150 and $316 in lower court costs.

2

Tubwell timely appealed the circuit court's judgment to the Mississippi Supreme Court and moved to proceed on appeal in forma pauperis. A hearing was conducted regarding Tubwell's pauper status. By order entered August 23, 2017, the circuit court granted Tubwell leave to proceed on appeal in forma pauperis.

¶6. On appeal, Tubwell argues: (1) there is insufficient evidence to support his convictions, (2) the county court erred in allowing his witness to be arrested in open court, (3) the county court erroneously threatened him with practicing law without a license, and (4) the county court erred in imposing fines and court costs due to his indigent status.

STANDARD OF REVIEW

¶7. "The county court was the fact finder, and the circuit court, as well as this Court, are bound by the judgment of the county court if supported by substantial evidence and not manifestly wrong." *Stevens v. Grissom*, 214 So. 3d 298, 300 (¶6) (Miss. Ct. App. 2017).

ANALYSIS

*I. Sufficiency of the Evidence*

¶8. Tubwell first argues there is insufficient evidence to support his convictions of the unsafe operation of a motor vehicle and failure to dim high beams. We separately address each offense, but we note that the standard of review is the same.

¶9. "A motion for [a JNOV] implicates the sufficiency of the evidence." *Lenoir v. State*, 224 So. 3d 85, 90 (¶18) (Miss. 2017). When reviewing a case for sufficiency of the evidence, "[we] must accept as true all credible evidence consistent with guilt" and "give the State the benefit of all favorable inferences that may reasonably be drawn from the

3

evidence." *Id.* at 90-91 (¶18). "[We] may reverse only when, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." *Id*. at 91 (¶18) (internal quotation mark omitted). "Thus, if any rational trier of fact could have found each and every one of the elements of the crime beyond a reasonable doubt, when viewing the evidence in the light most favorable to the prosecution, the verdict must stand." *Id.*

### A. Unsafe Operation of a Motor Vehicle

¶10. Tubwell was convicted of the unsafe operation of a motor vehicle in violation of City Code #9-332. Pursuant to City Code #9-332, "It shall be unlawful for any person to operate a motor vehicle or vehicle or allow for the operation of a motor vehicle in an unsafe, careless, illegal[,] or imprudent manner."

¶11. Here, Officer Defore testified that Tubwell was driving forty miles-per-hour in a twenty-five miles-per-hour zone. Officer Defore explained that Tubwell's speed was unsafe and excessive due to the fact that he was traveling in a residential neighborhood, at night, on a narrow road.[2]

¶12. Although Tubwell claims he was driving no more than fifteen miles-per-hour, his passenger, Amy Dunn, testified that he was driving approximately thirty miles-per-hour. Dunn agreed that the speed limit was twenty-five miles-per-hour and ultimately stated that

---

[2] Specifically, Officer Defore testified that "[i]t's a residential city street. It was dark. The roadway was narrowed from many cars being parallel parked on both sides of the roadway, which narrows the roadway. That neighborhood typically has regular pedestrian traffic. There are many driveways coming onto that road where cars or people could emerge."

4

she "couldn't really see the speedometer."

¶13.   In light of our standard of review, we find sufficient evidence was presented to support Tubwell's conviction of the unsafe operation of a motor vehicle.

### B.   Failure to Dim High Beams

¶14.   Tubwell was further convicted of the failure to dim high beams in violation of Mississippi Code Annotated section 63-7-33.  Under section 63-7-33, "whenever the driver of a vehicle approaches an oncoming vehicle within five hundred feet, such driver shall use a distribution of light or composite beam so aimed that the glaring rays are not projected into the eyes of the oncoming driver."

¶15.   Tubwell claims that "at no time was [Officer Defore]'s vehicle oncoming." He further claims Officer Defore "did not testify that he was blinded by the lights of Tubwell's vehicle." However, the record contradicts Tubwell's claims.  Indeed, the record reflects that at the time Officer Defore first observed Tubwell's vehicle, Officer Defore was traveling "eastbound" and Tubwell "was coming head-on westbound."  Moreover, the record indicates that as he approached Tubwell's oncoming vehicle, Officer Defore was "blinded by the high beams of [Tubwell's] truck."

¶16.   Tubwell testified that due to the age of his truck, his "[lights] don't work on bright." However, Tubwell offered no evidence, other than his own self-serving statement, to support this assertion.

¶17.   We find sufficient evidence was presented to support Tubwell's conviction of the failure to dim high beams.  As sufficient evidence was presented to support both of

Tubwell's convictions, the county court did not err in denying Tubwell's motion for a JNOV. Accordingly, this issue is meritless.

II.     *Witness's Arrest*

¶18.    At the conclusion of her trial testimony, Dunn was taken into custody and arrested on an outstanding warrant. Tubwell argues the county court erred in allowing "[his] only witness to be set up and arrested in court by the City of Southaven."[3] Tubwell claims that such actions "clearly tainted and prejudiced [his] case."

¶19.    In support of his claim, Tubwell relies on *Johnson v. State*, 105 So. 851 (Miss. 1925), *Brandon v. State*, 23 So. 517 (Miss. 1898), and *Chase v. State*, 22 So. 828 (Miss. 1897). However, Tubwell's reliance on these cases is misplaced.

¶20.    In *Johnson, Brandon*, and *Chase*, the court found that a witness's arrest in the presence of the jury was reversible error. *Johnson*, 105 So. at 852; *Brandon*, 23 So. at 518; *Chase*, 22 So. at 828-29. Here, unlike in *Johnson*, *Brandon*, and *Chase*, Dunn was not arrested in the presence of the jury[4] or the trial court. Instead, Dunn was arrested following her trial testimony, after she was released by the court, and outside of the court's presence. Accordingly, as the county court properly noted, "[Dunn's] arrest . . . had no [prejudicial] effect." As a result, this issue is without merit.

III.    *Judicial Threat*

---

[3] The record reflects that Dunn was not Tubwell's only witness at trial. Instead, in addition to Dunn, Tubwell also called Officer Brad Hodge, a sergeant in the K-9 division of the City of Southaven Police Department.

[4] As previously noted, a bench trial, not a jury trial, was conducted by the county court.

¶21. After Dunn was released and exited the courtroom, the county court instructed Tubwell to call his next witness. Tubwell advised that he would call Sergeant Hodge, and the following discussion occurred:

> Tubwell: Your Honor, while we are waiting on [Sergeant Hodge], I would like to make a note for the [c]ourt on the record, if you don't mind. My assumption is that they're about to arrest [Dunn], and the law is, I believe, that once a witness appears on a subpoena before the [c]ourt that that witness is protected from any other incident that might have occurred or which might cause her arrest because she appeared in this court on subpoena. And I don't think it would be proper to arrest this person since this person is under this [c]ourt's order and should be under the protection of the [c]ourt.

> Court: Well, Mr. Tubwell, one, that's something that's occurring outside the presence of the [c]ourt. Secondly, what you're doing is you're getting up here and making a legal argument on her behalf. And that sounds like practicing law, and I think you need to be really careful about that, okay. You can represent yourself, but you can't represent her. So, that is an issue for her to raise, not you. I understand what you're saying, but that's not — that's something that's happening outside the presence of the [c]ourt.

¶22. Tubwell argues the county court "erred, abused its discretion, and created an atmosphere requiring recusal, when [it] threatened [him] with practicing law without a license . . . ." However, as the trial transcript indicates, the county court did not "threaten" Tubwell but, instead, merely explained to him that any issue regarding Dunn's arrest should be raised by Dunn.

¶23. Additionally, assuming Tubwell asserts that the county court judge should have recused himself, the record clearly shows no such request for recusal was ever made by Tubwell. As Tubwell's allegations are unsupported and unfounded, we find this issue lacks

7

merit.

*IV.    Imposition of Court Costs and Fines*

¶24.    Tubwell argues the county court "erred in imposing court costs where [Tubwell] had been granted indigent status [and] remained indigent." The determination of indigent status is within the sound discretion of the trial judge. *Clay v. State*, 757 So. 2d 236, 239 (¶12) (Miss. 2000). Such determination shall not be overturned unless there is a showing of manifest error or abuse of discretion. *Id*.

¶25.    The record reflects that Tubwell was allowed to proceed in the county court in forma pauperis. According to the sworn affidavit submitted to the county court in support of his pauper status, Tubwell is unemployed and was last employed on June 11, 2014; Tubwell has not received any income from any source within the past twelve months, he does not own any cash, checking or savings accounts, and he does not own any real estate, stocks, bonds, notes, or other valuable property except for a 1990 GMC truck worth approximately $300; Tubwell has no dependents.

¶26.    However, there was sworn testimony presented at trial that was inconsistent with Tubwell's application for indigent status. Specifically, the trial testimony shows Dunn was paid to clean Tubwell's house, mow the yard, and clean his office. Moreover, at the time of trial, Tubwell's wife was a retired nurse,[5] and Tubwell received $376 per month in social security income. Thus, as the county court properly noted, "[Tubwell] filed an affidavit

---

[5] Tubwell advised the county court that at the time the traffic violations occurred in November 2014, his wife was employed as a nurse. However, at the time of trial in December 2015, she was retired. Tubwell did not advise how much his wife receives in retirement, only that she is a retired nurse.

under oath stating that [he] was indigent but . . . gave testimony that was inconsistent with indigent status." Accordingly, we do not find the county court's imposition of court costs was manifest error or an abuse of discretion.

¶27.  Tubwell further argues the fines were improper and excessive. We disagree. Tubwell does not cite any authority for the proposition that a fine may not be imposed upon an indigent found guilty of a crime. *Lee v. State*, 457 So. 2d 920, 924 (Miss. 1984). Simply because Tubwell was allowed to proceed in forma pauperis does not relieve him of his obligation to pay the traffic fines related to the offenses for which he was convicted. Thus, we find no reversible error in the county court's imposition of fines despite Tubwell's alleged indigency. *Id*.

¶28.  Additionally, the fines imposed were not excessive. Indeed, the record shows the fines are within the guidelines set forth by the City of Southaven. As the fines were neither improper nor excessive, the county court's imposition of the fines was not erroneous.[6]

CONCLUSION

¶29.  Overall, we find the judgment of the county court is supported by substantial evidence in the record and not manifestly wrong. *Stevens,* 214 So. 3d at 300 (¶6). Accordingly, we affirm the circuit court's judgment.

¶30.  **AFFIRMED.**

**BARNES AND CARLTON, P.JJ., WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR. McDONALD, LAWRENCE AND McCARTY, JJ.,**

---

[6] The record reflects that Tubwell was given 90 days to pay his court costs and fines. Thus, even though Tubwell and his wife are on a fixed income, he was given approximately three months to pay the costs and fines.

9

**NOT PARTICIPATING.**